UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NTD ARCHITECTS, a California corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>JON BAKER, and individual, RICHARD NOWICKI, an individual, BAKER NOWICKI DESIGN STUDIO, LLP, a California limited liability partnership, and DOES 1 through 100, inclusive,<br><br>  Defendants.<br>_____<br>JON BAKER, and individual, RICHARD NOWICKI, an individual, BAKER NOWICKI DESIGN STUDIO, LLP, a California limited liability partnership,<br><br>  Counter-Claimants,<br><br>vs.<br><br>NTD ARCHITECTS, a California corporation, MAHA ABOU-HAIDAR, an individual, G. WAYNE HUNTER, and individual, JORDAN S. KNIGHTON, an individual, GOODWIN S. OSIFESO, an individual, JAY R. TITTLE, an individual, and ROES 1 through 100, inclusive,<br><br>  Counter-Defendants | Civil No. 3: 11-cv-02836 AJB (JMA)<br><br>ORDER DENYING MOTION TO DISMISS COUNTERCLAIMS<br><br>(Doc. No. 32) |

Third Party Defendants MAHA ABOU-HAIDAR, G. WAYNE HUNTER, JORDAN S. KNIGHTON, GOODWIN S. OSIFESO and JAY R. TITTLE ("Counter-Defendants") filed a motion to dismiss, (Doc. No. 32), pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim. The Counter-Defendants assert that the Third and Fourth Counterclaims do not state a claim for which relief can be granted. (Doc. No. 32.) Counter-Claimants, JON BAKER ("Baker"), RICHARD NOWICKI ("Nowicki") "Counter-Claimants") filed an opposition, (Doc. No. 37), and Counter-Defendants filed a reply. (Doc. No. 39.) For the reasons set forth below, Counter-Defendants' motion to dismiss, (Doc. No. 32), is hereby DENIED.

## *Background*

### I. Factual Background

On or about February 14, 2011, the Board of Principals for NTD Architects ("NTD") met and decided to terminate the employment of JON BAKER ("Baker") who was the Chief Executive Officer of NTD,[1] and also a member of the Board of Principles and shareholder of NTD. Following the firing of Baker, RICHARD NOWICKI ("Nowicki") voluntarily ended his employment with NTD. Nowicki was also a member of the Board of Principals and a shareholder of NTD. After leaving NTD, Baker and Nowicki created BAKER NOWICKI DESIGN STUDIO, LLP ("BNDS"). The instant case stems from a suit filed by NTD against Baker, Nowicki and BNDS (collectively "Counter-Claimants") alleging copyright infringement and state law claims.

### II. Procedural

NTD filed a complaint in San Diego Superior Court on August 4, 2011, against Counter-Claimants alleging trade secret infringement, among other state law claims. Counter-Claimants filed a cross-complaint against NTD and MAHA ABOU-HAIDAR, G. WAYNE HUNTER, JORDAN S. KNIGHTON, GOODWIN S. OSIFESO and JAY R. TITTLE ("Counter-Defendants") alleging bad faith breach of employment contract,

---

[1] Baker was C.E.O. of NTD until 2007 when the Board of Directors voted to relieve Baker of the position. After stepping down Baker continued his involvement with NTD.

breach of fiduciary duty, inducing breach of employment contracts, intentional interference with prospective economic relations, negligent interference with prospective economic relations and unfair competition. (Case No. 12-cv-00020, Doc. No. 1-6.) NTD then filed a complaint in this Court on December 6, 2011, against Counter-Claimants alleging copyright infringement and false advertising. (Doc. No. 1). The State Court action was removed to this Court and has since been consolidated. The Counterclaims were filed in the 12-cv-20 case, however the Counter-Defendants filed a motion to dismiss Counterclaims in 11-cv-2836. (Doc. No. 19.) On August 10, 2012, this Court granted in part and denied in part Counter-Defendant's motion to dismiss.[2] (Doc. No. 28.) Counter-Claimants then filed a First Amended Counterclaim ("FACC") against Counter-Defendants solely, alleging: (1) bad faith breach of employment contract (Baker against NTD); (2) bad faith breach of employment contract (Nowicki against NTD); (3) breach of fiduciary duty; (4) unfair competition; (5) declaratory relief; and (6) accounting. (Doc. No. 29.) Counter-Defendant's filed the instant motion to dismiss as to Claims (3) and (4) in Counter-Claimant's FACC. (Doc. No. 32.)

## *Legal Standard*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block,* 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not

---

[2] Counter-Defendant's motion to dismiss was granted as to the third counterclaim for breach of fiduciary duty; granted as to fourth counterclaim against for inducing breach of employment contracts; granted as to fifth counterclaim for intentional interference with prospective economic relations; granted as to the sixth counterclaim for negligent interference with prospective economic relations; and denied as to seventh counterclaim for unfair competition.

contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556). The rule applies equally to a counterclaim. *See King County v. Rasmussen,* 299 F.3d 1077, 1090 (9th Cir. 2002).

## *Discussion*

Counter-Defendant's move to dismiss the third counterclaim for breach of fiduciary duty and the forth counterclaim for unfair competition in Counter-Claimant's FACC, (Doc. No. 29).

### *I. Third Counterclaim Against Counter-Defendants for Breach of Fiduciary Duties*
#### *A. Fiduciary Duty Owed as "Partners"*

"In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991). In their Third Counter-claim, Baker and Nowicki assert that despite NTD's existence as a corporate entity, it still acted as a partnership with regard to the "internal dealings amongst and between its principals and partners, including compensation, bonuses, profit sharing arrangements and ability to terminate an individual partner . . . ." (FACC, Doc. No. 29 at ¶ 56.) As a result of such internal dealings and structure, Baker and Nowicki argue that a duty was owed.[3] Baker and Nowicki also allege, as "Employee-Partners and members of the Board with the majority power to "hire" and "fire" fellow Board members Baker and Nowicki, the Counter-Defendants owed fiduciary duties of "care, good faith, loyalty, and honesty

---

[3] Under California partnership law, partners in a general partnership owe each other duties of loyalty and care. Cal. Corp. Code § 16404.

to [them]." (*Id.* at ¶ 57.) Baker and Nowicki allege Counter-Defendants' breached their fiduciary duty by plotting and conspiring to terminate Baker and Nowicki; acting to protect their own interests in NTD to the detriment of Baker and Nowicki; and encouraging Nowicki to mislead creditors of NTD and deprive Baker and Nowicki of the right to earn architect fees. (FACC, Doc. No 29 at ¶ 61(a) - (d).)

Counter-Defendants, however, contend that NTD is a corporation, and there is no evidence to support the assertion that it was ever a partnership or acted as such; there is no allegation of a partnership business apart from NTD; and the employment agreements do not constitute a partnership agreement. (Doc. No. 32 at 4-6.) Counter-Defendants also assert that Baker and Nowicki's contention that only certain aspects of NTD were operated as a partnership is insufficient to establish that a partnership existed and a corresponding duty was owed. (Doc. No. 29 at ¶ 56.)

Generally, when a business is incorporated, the partnership does not continue to exist after the formation of the corporation. *Kurwa v. Kislinger*, 204 Cal. App. 4th 21, 32 (2001) (review granted June 20, 2012). "If however, a corporation is a mere agency for the purpose of convenience in carrying out a [partnership or] joint venture agreement . . . ," then fiduciary duties may be owed between the parties in accordance with general partnership law. *Elsbach v. Mulligan*, 58 Cal.App.2d 354, 369 (1943).[4] Further, ". . . conflicts in evidence as to whether the operations of the parties constituted genuine corporate functions or whether the corporate form was employed merely as a convenient method of carrying out the agreement of the parties" are issues of fact. *Id*. In regards to the language contained within the employment agreements, while "labels affixed to relationships between parties are not determinative of the actual relationship," the intent

---

[4] The court held that Elsbach personally could recover damages from Mulligan for breach of his fiduciary duty to his co-venturer, despite the fact that the parties had incorporated their business prior. Courts in other states have likewise recognized that joint venturers may choose to operate their venture in the corporate form without divesting themselves of the rights and obligations of joint venturers. *Elsbach v. Mulligan*, 58 Cal.App.2d 354, 369 (1943); *See also, e.g.*, *Richbell Info. Servs. v. Jupiter Partners*, 309 A.D.2d 288 (2003); *Yoder v. Hooper*, 695 P.2d 1182, 1187–1188 (Colo.App. 1984); *Jolin v. Oster*, 44 Wis.2d 623 (1969); *Campbell v. Campbell*, 198 Kan. 181 (1967).

evidenced by such label is a factor to be considered when looking at the totality of the circumstances. *Alaubali v. Rite Aid Corp.*, C 06-5787 SBA, 2007 WL 3035270 *2 (2007) *citing Martin v. Phillips Petroleum Co.,* 42 Cal.App.3d 916, 919 (1974),

Additionally, it is without dispute that corporate directors owe a fiduciary duty to the corporation and its shareholders and must serve "in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders." (Corp. Code, § 309, subd. (a)); *Berg & Berg Enterprises*, *LLC v. Boyle*, 178 Cal.App.4th 1020, 1037 (2009). Thus, even if the internal structure of NTD does not characterize it as a partnership, it is possible that a fiduciary duty was still owed.

Based upon the foregoing, the Court finds Counter-Claimants' third counterclaim for breach of fiduciary duty alleges a claim for which relief can be granted, as it is possible that NTD's corporate form was a mere agency for carrying out a partnership or joint venture in which Counter-Defendants would owe Baker and Nowicki fiduciary duties. Since Counter-Claimants also allege sufficient facts as to breach and damages proximately caused by such breach, the motion to dismiss the third counterclaim one this basis is DENIED.

### B. Fiduciary Duty Owed as "Majority Shareholders"

Baker and Nowicki's third counterclaim further alleges the Counter-Defendants, as majority shareholders, owed fiduciary duties of care, good faith, loyalty and honesty to Baker and Nowicki, as minority shareholders. Baker and Nowicki, together, allege that Counter-Defendants "conducted meetings of the Board without Nowicki being present, despite the fact that Nowicki remained a shareholder, partner, principal, and member of the board";[5] acted as majority shareholders for their own personal gain;[6] wrongfully fired

---

[5] *See* Doc. No. 29 at ¶ 30.

[6] *Id.* at ¶¶ 39, 60-61.

Baker;[7] and constructively fired Nowicki.[8] It is also alleged that Counter-Defendants breached their fiduciary duty to Counter-Claimant Baker specifically as a majority shareholders by ". . . acting in concert and representing a unified bloc of the majority shareholders, [Counter-Defendants] brought and passed a motion to fire Baker, after 27 years of service, without prior notice, without cause and without any severance pay or accounting for his full interest in NTD." (FACC, Doc. No. 29 at ¶ 27.) Additionally, Counter-Claimant Baker argues that NTD improperly changed his dismissal to one "with cause" in a bad faith attempt to deprive him of his ownership interest in NTD and his right to receive NTD deferred compensation. (*Id*. at ¶¶ 38-39.) Baker and Nowicki contend that they suffered harm in an individual capacity as a result of Counter-Defendants denying them an annual bonus and severance pay. (*Id*. at ¶ 64.)

Counter-Defendants, in turn, assert that Baker and Nowicki have failed to show how Counter-Defendants misused their control of the corporation by virtue of their ownership in NTD. In other words, Counter-Defendants contend that none of the alleged breaches are based on Counter-Defendants' fiduciary duties as majority shareholders but rather, the actions alleged were taken as directors or are simply unrelated to Counter-Defendants' ownership in NTD.[9] (Doc. No. 32 at 7:21-26; 8:1.)

---

[7] *Id*. at ¶ 27.

[8] *Id*. at ¶ 29.

[9] Counter-Defendants also contend that "Counter-claimants do not (and cannot) allege that NTD is a statutory close corporation or that there is a shareholder agreement which provides for shareholder management of the corporation." (Doc. No. 32 at 8:23-25.) Under the common law test, however, courts generally look for some or all of the following attributes in order to define a corporation as a close corporation: a small number of stockholders, no ready market for its stock, participation of a substantial majority of the stockholders in the management, direction and operations of the corporation, and concentration of the stockholders in a limited geographical location. 111 A.L.R. 5th 207 (2003). While Counter-Claimants Baker and Nowicki allege facts supporting some factors (all five Third-Party Defendants were shareholders, partners, principals and members of the Board (FACC, Doc. No. 29 at ¶¶ 5-9); four out of five Counter-Defendants, who are also stockholders reside in California with the fifth Counter-Defendant residing nearby in Arizona (*Id*. at ¶¶ 5-9)), they fail to allege facts sufficient to support such a finding that NTD is a closed corporation under the common law test. Regardless of whether the corporation is close or not, the Court finds that Counter-Claimants alleged sufficient facts to state a claim upon which relief can be

While breach of fiduciary duty to stockholders is a question of fact, existence of a legal duty in first instance and its scope are questions of law. *Kirschner Bros. Oil, Inc. v. Natomas Co.*, 185 Cal. App. 3d 784 (1986). Majority shareholders, either singly or acting in concert to accomplish a joint purpose, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner. *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 108 (1969). Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. *Id.*

Even if Counter-Defendants were acting as directors, not majority shareholders, they still owed certain fiduciary duties. For example, a directors' use of control of a corporation to obtain an advantage that is not available to all stockholders, without regard to the detriment to minority stockholders and without a compelling business purpose is inconsistent with directors' duty of good faith and inherent fairness to minority stockholders. *Fisher v. Pennsylvania Life Co.*, 69 Cal. App. 3d 506 (1977). The fiduciary duty of majority stockholders is a "comprehensive rule of inherent fairness from the viewpoint of the corporation and those interested therein. [It] applies alike to officers, directors and controlling shareholders in exercise of powers which are theirs by virtue of their position . . . ." *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 460 P.2d 464 (1969). Thus, Baker and Nowicki's allegations that Counter-Defendants used their power as majority shareholders, whether acting as majority shareholders or as Board members, for their own personal gain presents a plausible claim for relief. As such, the motion to dismiss the third counterclaim on this basis is DENIED.

## II. Fourth Counter-Claim Against Third-Party Defendants for Unfair Competition

The California Business and Professions Code § 17200 describes unfair competition to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. § 17200. The fourth counterclaim alleges unfair competition on the part of the Counter-Defendants through

---

granted.

their continuous use of the resumes and achievements of Baker and Nowicki as a part of NTD's marketing materials and wrongful interference in the Lemon Grove and Mesa College Projects in violation of California Business and Professions Code § 17200. (Doc. No. 29 at ¶ 67.)  Counter-Claimants Baker and Nowicki further allege the Counter-Defendants threatened local project engineers and mislead the public.  (*Id.*)

Counter-Defendants argue that because it is alleged that NTD acted through Counter-Defendants when it committed the unfair acts constituting a violation of the California Business and Professions Code § 17200, Counter-Defendants are shielded from individual liability.  (Doc. No. 32 at 8:13-16.)  Counter-Defendants base this argument on the Court's prior order, (Doc. No. 28), that dismissed the claims for intentional and negligent interference as to the Counter-Defendants because they were acting as corporate agents.  Counter-Defendants contend that the counterclaims for unfair competition fail here for the same reason.

Although directors and officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, they can be held personally liable if they participate in the wrong or authorize or direct that it be done. *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 595 (1970); *Imperial Ice Co. v. Rossier*, 18 Cal.2d 33, 38 (1941); *Lawless v. Brotherhood of Painters*, 143 Cal.App.2d 474, 478 (1956).  An officer or director may be found to have actively participated in tortious conduct if he "specifically authorized, directed or participated in the allegedly tortious conduct" or if he "knew about and allowed the tortious conduct to occur." *PMC, Inc. v. Kadisha,* 78 Cal.App.4th 1368, 1380 (2000).  All officers and directors who are shown to have done so, "are liable for the full amount of the damages suffered." *Id*. at 1381-82.

The Court finds that the Counter-Claimants have alleged enough to constitute a plausible claim of "unfair, deceptive, untrue or misleading advertising" pertaining to the Counter-Defendants' actions. The acts of not moving forward with the projects and the use of Counter-claimants' personal resumes after they had left NTD are arguably

sufficient to state a claim for unfair competition. As such, the motion to dismiss the fourth counterclaim is DENIED.

### *Conclusion*

For the reasons set forth above, Counter-Defendant's motion to dismiss the third and fourth counterclaims is DENIED.

IT IS SO ORDERED.

DATED: April 10, 2013

_____
Hon. Anthony J. Battaglia
U.S. District Judge